MacCONAGHY & BARNIER, PLC
JOHN H. MacCONAGHY, SBN 83684
JEAN BARNIER, SBN 231683
645 First St. West, Suite D
Sonoma, California 95476
Telephone: (707) 935-3205
Facsimile: (707) 935-7051
Email: macclaw@macbarlaw.com

Attorneys for Plaintiff
JANINA M. HOSKINS, Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>ARTLOAN FINANCIAL SERVICES, INC.<br><br>            Debtor.<br>_____<br>JANINA M. HOSKINS, Trustee<br>in Bankruptcy of the Estate of<br>ARTLOAN FINANCIAL SERVICES, INC.<br><br>            Plaintiff,<br><br>    v.<br><br>RAY PARKER GAYLORD, aka ERNEST RAY PARKER; ANTHONY BARREIRO; WIEGEL LAW GROUP, A PROFESSIONAL CORPORATION; WIEGEL & FRIED, LLP; ANDREW J. WIEGEL; and CLIFFORD FRIED;<br><br>            Defendants.<br>_____ | Case No. 11-31416 HLB<br>(Chapter 7)<br><br>AP No. 12-3078 HLB<br><br>**SECOND AMENDED COMPLAINT FOR (1) AVOIDANCE OF FRAUDULENT TRANSFERS, (2) BREACH OF FIDUCIARY DUTY, AND (3) PROFESSIONAL NEGLIGENCE** |

///

///

Plaintiff Janina M. Hoskins, Trustee in Bankruptcy of the Estate of Artloan Financial Services, Inc., ("Plaintiff"), hereby alleges:

## INTRODUCTION

1. This adversary proceeding arises from a fraudulent scheme designed and perpetrated by two of the Debtor's officers and directors, Defendants Ray Parker Gaylord and Anthony Barreiro, to dissipate the working capital of the Debtor for their own personal benefit through a pattern of unauthorized self-dealing, resulting in the ultimate destruction of the Debtor's business.

2. The Debtor was in the business of acting as pawn broker for fine art and collectible antiques. Its basic business model was to solicit borrowers ("Pawn Borrowers") willing to pledge fine art and collectible antiques in exchange for short term, high interest loans. As is usual in the pawn brokerage business, the Debtor purported to secure these loans by taking physical possession of the collateral. The Debtor funded these loans largely through borrowing from private, non-institutional lenders ("the Collateral Lenders"). The Debtor consistently represented to the Collateral Lenders that their loans would be duly secured by individual pawn loans held by the Debtor as a creditor of Pawn Borrowers. The Debtor further consistently represented to the Collateral Lenders that the pawn loans it made to Pawn Borrowers would be well secured by valuable fine art and antiques, which could be liquidated through auction for well in excess of the amount of the pawn loan in the event of a default by the borrower in question.

3. Sometime after the commencement of the Debtor's business, it became apparent to Defendants Gaylord and Barreiro that it was impracticable to operate this business model on a long-term, profitable basis. Among other things, the Debtor was unable to locate a significant number of Pawn Borrowers with quality fine art and antiques willing to pledge those assets to the Debtor as collateral. Instead of implementing a new business model or terminating the Debtor's business, Defendants Gaylord and Barreiro proceeded to cause the Debtor to incur millions of dollars of additional liabilities. They did this by fraudulently manufacturing the illusion of an

ongoing pawn brokerage business by purporting to pledge their own personal property for new loans, at highly inflated values, and use this illusion of business activity to fraudulently obtain more secured working capital loans from new Collateral Lenders. Typically Defendants Gaylord and Barreiro defaulted on these loans. However, instead of causing the Debtor to exercise its collateral rights, liquidate the pawned items, and turnover the proceeds to the Debtor's Collateral Lender(s) who funded the loan(s) in question, Defendants Gaylord and Barreiro did the following two things. First, as to a substantial amount of the pawned collateral in question, they removed and secreted these assets to a warehouse in Switzerland. Second, as to most of the remaining collateral, they held in-house auctions and retained the proceeds to pay themselves executive salaries.

**JURISDICTION AND VENUE**

4. On April 13, 2011 (the "Petition Date"), Artloan Financial Services, Inc. ("Debtor") filed a voluntary petition for relief in the above-entitled Court (the "Main Case"). Debtor remained a debtor-in-possession until July 11, 2011, at which time Plaintiff was duly appointed as the Chapter 11 Trustee in Bankruptcy of Debtor's Estate. On August 19, 2011, the Main Case was converted to a case under Chapter 7 of the Bankruptcy Code, and Plaintiff was duly appointed as the Chapter 7 Trustee in Bankruptcy.

5. This U.S. District Court for the Northern District of California has original subject matter jurisdiction over this adversary proceeding pursuant to the provisions of 28 USC §§ 157 and 1334 and 11 USC §§ 541, 544 and 548. The District Court has, by general order, referred the Main Case and all adversary proceedings filed in connection with the Main Case to the U.S. Bankruptcy Court for the Northern District of California. Venue is proper here pursuant to the provisions of 28 USC § 1409.

6. This matter is a "core proceeding" as defined by 28 USC § 157(b)(2)(A), (C), (E), and (O). Plaintiff consents to final judgment of the Bankruptcy Court pursuant to the provision

of 28 USC § 157(c)(2).

## PARTIES

7. Plaintiff Janina M. Hoskins is the duly appointed Chapter 7 Trustee of the Estate of Artloan Financial Services, Inc., Due to the fact that Plaintiff was not appointed until after the Petition Date, Plaintiff does not have personal knowledge of the facts alleged in this complaint that arose prior to the filing of the Main Case, and therefore alleges all of those facts on information and belief. Plaintiff reserves her right to amend this Complaint to allege additional claims against the Defendants and to challenge and recover transfers made to or for the benefit of any of the Defendants in addition to those transfers alleged in this Complaint.

8. Defendants Ray Parker Gaylord, aka Ernest Ray Parker, and Anthony Barreiro are each individuals residing and doing business in the Northern District of California. At relevant times, Defendants Gaylord and Barreiro have been some, but not all, of the officers, directors, and managers of the Debtor and its predecessor by merger Artloan Financial Services, LLC. As such, Defendants Gaylord and Barreiro have owed the Debtor and its predecessors fiduciary duties of care and loyalty. Defendants Gaylord and Barreiro are referred to below as "the Insider Defendants."

9. Defendant Wiegel & Fried, LLP is a professional limited liability partnership organized and existing under the laws of the State of California, specifically pursuant to the provisions of California Corporations Code Sections 16951 *et seq*. At all relevant times, Defendant Wiegel & Fried, LLP has been engaged in the practice of law in the State of California, and doing business in the Northern District of California. At all relevant times, the partners of Defendant Wiegel & Fried, LLP have been Defendants Andrew J. Wiegel and Clifford Fried, who are each licensed attorneys residing and doing business in the Northern District of California.

10. From and after no later than January 1, 2007, Defendant Wiegel & Fried LLP failed or refused to comply with the requirements of California Corporations Code Section

16956(a)(2) to provide client security "...for claims based upon acts, errors, or omissions arising out of the practice law" in the amounts required by Corporations Code Section 16956(a)(2)(A), (B) & (D).

11. As a result of the failure or refusal of Defendant Wiegel & Fried, LLP to comply with the client security requirements of California Corporations Code Section 16956(a)(2), Defendants Andrew J. Wiegel and Clifford Fried are each deemed to have automatically guaranteed payment of all claims against Defendant Wiegel & Fried LLP for claims based upon acts, errors, or omissions arising out of the practice of law, including the claims alleged herein, to extent provided by California Corporations Code Section 16956(a)(2)(C).

12. Defendant Wiegel Law Group, A Professional Corporation, is a professional law corporation organized and existing under the laws of the State of California, and doing business in the Northern District of California. Defendants Wiegel & Fried, LLP , Wiegel Law Group, Andrew J. Wiegel and Clifford Fried are collectively referred to below as "the Wiegel Defendants."

**FIRST CLAIM FOR RELIEF**
**(Avoidance of Fraudulent Transfers – 11 USC § 548)**
**(Against the Insider Defendants Only)**

13. Plaintiff realleges and incorporate the allegations contained in Paragraphs 1 through 12, inclusive.

14. Within two years before the Petition Date, the Debtor transferred funds to the Insider Defendants in an amount presently unknown, but which Plaintiff is informed and believes and on that basis alleges exceeds the sum of $482,982.00 to the Insider Defendants (the " 548 Transfers").

15. The Debtor received less than a reasonably equivalent value in exchange for the 548 Transfers to the Insider Defendants. Specifically the 548 Transfers were purportedly for (a) unreasonable salaries and expense reimbursements well in excess of a commercially reasonable

amount given the services performed by the Insider Defendants and (b) pawn loans of art work and antiques purportedly owned by the Insider Defendants, which loans were made based on artificially inflated valuations and without delivery of physical possession of the subject collateral.

16. The Debtor made the 548 Transfers at a time when it was insolvent, or it became insolvent as a result of the 548 Transfers.

17. The Debtor make the 548 Transfers at a time when it was engaged in a business, or about to engage in a business for which its remaining property was an unreasonably small capital.

18. The Debtor made the 548 Transfers at a time when the Debtor intended to incur debts that would be beyond its ability to repay as they became due.

19. The Debtor made the 548 Transfers, in part, to and for the benefit of "insiders" as the term is defined in 11 USC § 101(31)(B) and not in the ordinary course of business.

20. The Insider Defendants did not take the 548 Transfers in good faith.

21. Plaintiff is therefore entitled to have the 548 Transfers set aside as a fraudulent transfers and avoided pursuant to the provisions of 11 USC § 548.

22. Plaintiff is therefore entitled to damages against the Insider Defendants and each of them in an amount not less than $482,982.00, plus interest thereon from the date of each transfer at the federal judgment rate, according to proof.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### SECOND CLAIM FOR RELIEF
### (Avoidance of Fraudulent Transfers – 11 USC § 544(b))
### (Against the Insider Defendants Only)

23. Plaintiff realleges and incorporate the allegations contained in Paragraphs 1 through 22, inclusive.

24. Among the rights and powers of Plaintiff as the duly appointed Trustee in Bankruptcy of the Estate of the Debtor, are the right to avoid any transfer of an interest of the

Debtor in property that is avoidable under applicable law by an actual creditor holding an allowable unsecured claim against the Debtor as of the filing of the Petition Date.

25. Within four years before the Petition Date, the Debtor transferred to the Insider Defendants funds in an amount presently unknown, but which Plaintiff is informed and believes and on that basis alleges exceeds the sum of $888,466.00 (the " 544 Transfers").

26. The Debtor received less than a reasonably equivalent value in exchange for the 544 Transfers to the Insider Defendants. Specifically the 544 Transfers were purportedly for (a) unreasonable salaries and expense reimbursements well in excess of a commercially reasonable amount given the services performed by the Insider Defendants and (b) pawn loans of art work and antiques purportedly owned by the Insider Defendants, which loans were made based on artificially inflated valuations and without delivery of physical possession of the subject collateral.

27. The Debtor made the 544 Transfers at a time when it was insolvent, or it became insolvent as a result of the 544 Transfers.

28. The Debtor make the 544 Transfers at a time when it was engaged in a business, or about to engage in a business for which its remaining property was an unreasonably small capital.

29. The Debtor made the 548 Transfers at a time when the Debtor intended to incur debts that would be beyond its ability to repay as they became due.

30. The Insider Defendants did not take the 544 Transfers in good faith.

31. There are actual creditors of the Debtor holding allowable claims who, as of the Involuntary Petition Date, had the right to bring an action to set aside the 544 Transfers pursuant to the provisions of the California Uniform Fraudulent Transfer Act, California Civil Code §§ 3439, *et seq*. Plaintiff is therefore entitled to assert these remedies pursuant to the provisions of 11 USC § 544(b). These actual creditors include, without limitation, Monica Cayton and Craig Hulse.

8034.PARKER.SAC.WPD                                                                                                    PAGE 7

Case 12-03078    Doc# 103    Filed: 04/01/13    Entered: 04/01/13 16:29:15    Page 7 of 20

32. Plaintiff is therefore entitled to have the 544 Transfers set aside as a fraudulent transfers and avoided pursuant to the provisions of 11 USC § 544(b).

33. Plaintiff is therefore entitled to damages against the Insider Defendants and each of them in an amount not less than $888,466.00, plus interest thereon from the date of each transfer at the rate of 7 % per annum, according to proof.

WHEREFORE, Plaintiff prays for judgment as set forth below.

**THIRD CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty – California Substantive Law)**
**(Against the Insider Defendants Only)**

34. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 33, inclusive.

35. Plaintiff is informed and believes and on that basis alleges that at all relevant times up to October 9, 2007, the Insider Defendants were managing members of Artloan Financial Services, LLC, a California limited liability company. On or about October 9, 2007, Artloan Financial Services, LLC was merged into the Debtor Artloan Financial Services, Inc., a Delaware corporation, from which time the Insider Defendants were officers and two of the five members of the Board of Directors of the Debtor.

36. At all relevant times, the assets, creditors, principal place of business, and the domicile of the Debtor's officers, directors, and shareholders has been in the State of California. Plaintiff is informed and believes and on that basis that, for those reasons, notwithstanding the fact that the Debtor is a Delaware corporation, the rights and liabilities of the Insider Defendants as officers and directors of the Debtor are properly determined by the substantive corporate law of the State of California, pursuant to applicable choice of law rules.

37. As managing members, officers and directors of the Debtor, the Insider Defendants owed it fiduciary duties of care and loyalty.

38. From no later than October 9, 2007 and continuing through July 11, 2011 the Insider Defendants and each of them breached their fiduciary duties of care and loyalty to the

Debtor, all in violation of California Corporations Code Sections 316, 500, 501, 503, and 17153.

39. Specifically, and without any limitation of the foregoing, the Insider Defendants committed each of the following acts and omissions in their management of the Debtor:

    (a) Commingled and failed to segregate the funds of the Debtor, and made unauthorized diversion of the Debtor's assets to or for the benefit of themselves and other entities they controlled, in an amount not less than $888,466.00, including (1) bogus pawn loans, as alleged above; (2) unreasonable salaries and other draws; and (3) various other improper payments still under investigation;

    (b) Failed to cause the Debtor to maintain accurate books of account;

    (c) Caused the Debtor to incur in excess of $3,000,000 in liabilities for fraudulent loans procured from various Collateral Lenders, through an ongoing scheme whereby these Collateral Lenders were promised that their loans would be duly secured by specific pawn loans made by the Debtor when, in fact, none of these Collateral Lenders were given duly perfected security interests and many of them were promised first position security interests on the same collateral;

    (d) Filed knowingly false Schedules of Assets and Liabilities and Statement of Financial Affairs in the Main Case herein, which *inter alia* concealed (1) numerous actionable transfers and distributions to themselves, (2) their personal addresses, (3) the identity and location of various artwork, antiques, and jewelry which were the property of the Debtor, and (4) other matters still under investigation by the Trustee;

    (e) Continued to operate and consume the assets of the Debtor solely for their personal benefit while incurring significant additional debts and withholding the liquidation value of these assets for creditors;

(f) Concealed their fraudulent self-dealing from the Board of Directors of the Debtor.

40. Plaintiff is informed and believes an on that basis alleges that had the Insider Defendants not breached their fiduciary duties to the Debtor, as alleged above, the Debtor would have been able to reorganize and/or liquidate its assets in a manner to generate a significant return to its creditors.

41. As a direct and proximate cause of this breach of fiduciary duties, the Estate has been damaged in an amount presently unknown, but which Plaintiff is informed and believes and on that basis alleges exceeds $3,000,000.

42. The Insider Defendants' actions were malicious, fraudulent, and oppressive. Consequently, Plaintiff is entitled to punitive and exemplary damages according to proof.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### FOURTH CLAIM FOR RELIEF
**(Breach of Fiduciary Duty – Delaware Substantive Law)**
**(Against the Insider Defendants Only)**

43. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42, inclusive.

44. Plaintiff is informed and believes and on that basis alleges that at all relevant times up to October 9, 2007, the Insider Defendants were managing members of Artloan Financial Services, LLC, a California limited liability company. On or about October 9, 2007, Artloan Financial Services, LLC was merged into the Debtor Artloan Financial Services, Inc., a Delaware corporation, from which time the Insider Defendants were officers and two of the five members of the Board of Directors of the Debtor.

45. This claim for relief is pled in the alternative that the rights and liabilities of the Insider Defendants as officers and directors of the Debtor are properly determined by the substantive corporate law of the State of Delaware.

46. As managing members, officers and directors of the Debtor, the Insider

Defendants owed it fiduciary duties of care and loyalty.

47. From no later than October 9, 2007 and continuing through July 11, 2011 the Insider Defendants and each of them breached their fiduciary duties of care and loyalty to the Debtor, all in violation of 8 Delaware Code Sections 141, 143, 144, 170, 172, 174, 281 and 282.

48. Specifically, and without any limitation of the foregoing, the Insider Defendants committed each of the following acts and omissions in their management of the Debtor:

(a) Commingled and failed to segregate the funds of the Debtor, and made unauthorized diversion of the Debtor's assets to or for the benefit of themselves and other entities they controlled, in an amount not less than $888,466.00, including (1) bogus pawn loans, as alleged above; (2) unreasonable salaries and other draws; and (3) various other improper payments still under investigation;

(b) Failed to cause the Debtor to maintain accurate books of account;

(c) Caused the Debtor to incur in excess of $3,000,000 in liabilities for fraudulent loans procured from various Collateral Lenders, through an ongoing scheme whereby these Collateral Lenders were promised that their loans would be duly secured by specific pawn loans made by the Debtor when, in fact, none of these Collateral Lenders were given duly perfected security interests and many of them were promised first position security interests on the same collateral;

(d) Filed knowingly false Schedules of Assets and Liabilities and Statement of Financial Affairs in the Main Case herein, which *inter alia* concealed (1) numerous actionable transfers and distributions to themselves, (2) their personal addresses, (3) the identity and location of various artwork, antiques, and jewelry which was the property of the Debtor, and (4) other matters still under investigation by the Trustee;

(e) Continued to operate and consume the assets of the Debtor solely for their personal benefit while incurring significant additional debts and withholding the liquidation value of these assets for creditors;

(f) Concealed their fraudulent self-dealing from the Board of Directors of the Debtor.

49. Plaintiff is informed and believes an on that basis alleges that had the Insider Defendants not breached their fiduciary duties to the Debtor, as alleged above, the Debtor would have been able to reorganize and/or liquidate its assets in a manner to generate a significant return to its creditors.

50. As a direct and proximate cause of this breach of fiduciary duties, the Estate has been damaged in an amount presently unknown, but which Plaintiff is informed and believes and on that basis alleges exceeds $3,000,000.

51. The Insider Defendants' actions were malicious, fraudulent, and oppressive. Consequently, Plaintiff is entitled to punitive and exemplary damages according to proof.

WHEREFORE, Plaintiff prays for judgment as set forth below.

**FIFTH CLAIM FOR RELIEF**
(Damages for Professional Negligence)
(Against the Wiegel Defendants Only)

52. Plaintiff realleges and incorporate the allegations contained in Paragraphs 1 through 51, inclusive.

53. Plaintiff is informed and believes and on that basis alleges that at all relevant times prior to April 22, 2010, Defendant Wiegel & Fried, LLP maintained two separate professional offices, one located at 414 Gough St., San Francisco, CA, principally managed by Defendant Andrew J. Wiegel and one located at 483 9th St., Oakland, CA, principally managed by Defendant Clifford Fried. Plaintiff is further informed and believes and on that basis alleges that John Baba, Esq., was employed as an associate attorney by Defendant Wiegel & Fried, LLP

8034.PARKER.SAC.WPD                                                                                                            PAGE 12

Case: 12-03078    Doc# 103    Filed: 04/01/13    Entered: 04/01/13 16:29:15    Page 12 of 20

and worked under the direct supervision and control of Defendant Andrew J. Wiegel at the San Francisco office of Defendant Wiegel & Fried, LLP.

54. Plaintiff is informed and believes and on that basis alleged that at all relevant times, any client matters conducted by Defendant Wiegel & Fried, LLP, pertaining to the Debtor Artloan or the Insider Defendants were performed from the San Francisco office of Defendant Wiegel & Fried, LLP. Defendant Wiegel & Fried, LLP acted as attorney of record for the Debtor in various litigation matters up through April 22, 2010.

55. Plaintiff is informed and believes and on that basis alleges that on or about February 19, 2010, Defendants Andrew J. Wiegel and Clifford Fried jointly decided to reorganize the professional legal practice of Defendant Wiegel & Fried, LLP. In that connection, Defendant Andrew J. Wiegel incorporated Defendant Wiegel Law Group as a professional law corporation, and thereafter caused the leasehold for 414 Gough St., leasehold improvements, furniture, fixtures, and equipment formerly used by the San Francisco office Wiegel & Fried, LLP to be assigned to Defendant Wiegel Law Group. Concurrently, Defendant Wiegel Law Group retained numerous client files for Wiegel & Fried LLP clients for which the attorneys Andrew J. Wiegel and/or John Baba were principally responsible, and Defendant Wiegel Law Group formally assumed all professional duties and obligations owed by Wiegel & Fried, LLP to such clients, including the Debtor.

56. From and after April 22, 2010, and continuing up through the present time, the Defendant Wiegel Law Group ("WLG") has been jointly and severally liable under principles of successor liability for any and all negligent acts and omissions of Defendant Wiegel & Fried, LLP ("W&F"), due to, among other things, (1) WLG's continuation of the same business and profession at the same location with the same principal and professional and clerical employees as the San Francisco office of W&F, (2) WLG's ongoing use and consumption of the assets of W&F in the practice of law, (3) the conscious decision of Defendant Andrew J. Wiegel in his capacity of as a principal of W&F to violate the client security provisions of Cal. Corp Code

Section 16956 as to client matters assigned by W&F to WLG, and (4) the inadequate capitalization of W&F with respect to provision of client security for professional errors and omissions on client matters assigned to WLG.

57. The Wiegel Defendants, in one combination or another, acted as attorneys for the Debtor up through the Petition Date. The Wiegel Defendants were retained by the Debtor at various times for the purposes of providing legal advice and services. The scope of this representation included (1) the provision of general business advice and consultation, (2) the provision advice, consultation, and services necessary to organize the Debtor into a California limited liability company, (3) the provision of advice and consultation on appropriate organizational governance, (4) the preparation, advice concerning the use, and negotiation of the "Loan and Security Agreement" debt instruments used by the Debtor, and (5) the representation of the Debtor in certain litigation claims asserted by unpaid Collateral Lenders arising out of these same "Loan and Security Agreement" debt instruments.

58. In undertaking this representation, the Wiegel Defendants assumed a duty of care towards the Debtor. This duty of care includes a duty to exercise reasonable care and skill in providing legal advice and services. This duty also included a duty of good faith and fidelity, which required the Wiegel Defendants to avoid representation of conflicting interests.

59. Specifically and without limitation, on behalf of the Debtor, the Insider Defendants retained and relied upon the Wiegel Defendants to draft the debt instruments the Debtor used with its Collateral Lenders up through at least May of 2008, and to advise the Debtor on the how to lawfully grant enforceable security interests in certain of its assets to those Collateral Lenders. In that connection, Plaintiff is informed and believes and on that basis alleges that the Insider Defendants informed the Wiegel Defendants that its Collateral Lenders were largely unsophisticated private individuals, who would all be relying on the Debtor to ensure that their secured loans would be adequately documented and enforceable.

60. In the course of drafting the debt instruments and advising the Debtor concerning

their use, the Wiegel Defendants committed the following acts and omissions:

(a) negligently failed to advise the Debtor that any security interest it granted should be perfected by the filing of a UCC-1 Financing Statement with the California Secretary of State, and/or failed to file such UCC-1 Financing Statements;

(b) negligently and incorrectly advised the Debtor, the Insider Defendants, and other officers and employees of the Debtor, that the form "Loan and Security Agreement" it prepared for the Debtor's use with multiple Collateral Lenders was the functional equivalent in all respects of a duly filed UCC-1 Financing Statement;

(c) negligently and incorrectly drafted the form "Loan and Security Agreement", knowing that this form would be used with multiple Collateral Lenders without modification, to define "Collateral" as all "accounts", "general intangibles", "chattel papers", "documents", "letters of credit", "instruments," "deposit accounts", "inventory", "products", "fixtures" and "equipment" owned by the Debtor, and to further provide that each of these multiple Collateral Lenders "...has and will at all times continue to have a first priority perfected security interest in all of the Collateral...", when the Wiegel Defendants knew or should have known that it was impossible to grant first priority perfected security interests in the same collateral to multiple lenders.

61. Further, during the time the Wiegel Defendants were representing the Debtor, the Wiegel Defendants knew, or in the exercise of reasonable care and skill in the provisions of legal services should have known, that the Insider Defendants were engaged in a pattern of ongoing gross mismanagement, gross negligence, fraud, or breach of fiduciary duty with respect to the Debtor. Among other things, the Wiegel Defendants knew or should have known that the Insider Defendants were committing all of the acts and omissions alleged in Paragraphs 39(a), (b), (c), (e), and (f) and 48(a), (b), (c), (e), and (f) as alleged above.

62. Despite the fact that the Wiegel Defendants knew or should have known of this wrongful conduct by the Insider Defendants, the Wiegel Defendants negligently failed or refused to advise the entire Board of Directors of the Debtor (a) of the existence of this gross mismanagement, gross negligence, fraud or breach of fiduciary duty by the Insider Defendants, (b) the necessity to take immediate action to rectify this gross mismanagement, gross negligence, fraud and breach of fiduciary duty, (c) the necessity to take immediate action to responsibly liquidate the assets of the Debtor to avoid deepening its insolvency, (d) the necessity to timely assert claims of behalf of the Debtor against the Insider Defendants, and (e) the ongoing and increasing liabilities being incurred by the Debtor as a result of the fraudulent conduct by the Insider Defendants towards the Debtor's Collateral Lenders as alleged in Paragraphs 39(c) and 48(c) above.

63. The Wiegel Defendants also violated their duty of fidelity and good faith to the Debtor by accepting representation of interests in conflict with those of the Debtor.

64. Specifically and without limitation, the Wiegel Defendants, in concert with the ongoing scheme of the Insider Defendants to frustrate legitimate creditor claims and waste corporate assets for their personal benefit while concealing their wrongful conduct from the entire Board of Directors of the Debtor, accepted the dual representation of both the Debtor and the Insider Defendants in various litigation claims asserted by defrauded Collateral Lenders arising out of the "Loan and Security Agreement" debt instruments negligently drafted by the Wiegel Defendants. The Wiegel Defendants purported to direct the Debtor to execute a written waiver of this clear conflict of interest, but they negligently failed or refused to insist that it be presented to the entire Board of Directors for review, with the Insider Defendants abstaining from consideration as self-interested Directors, and instead permitted the Insider Defendants to execute the written waiver both on their own behalf and purportedly on behalf of the Debtor without a lawful resolution of the Debtor's Board of Directors.

65. Had the Wiegel Defendants and each of them not acted negligently and in breach

8034.PARKER.SAC.WPD                                                                                                          PAGE 16

Case: 12-03078    Doc# 103    Filed: 04/01/13    Entered: 04/01/13 16:29:15    Page 16 of 20

of their respective duties of fidelity and good faith to the Debtor, the Debtor would have been able to timely marshal, reorganize, and/or liquidate its assets for the benefit of its creditors and avoid incurring additional unnecessary liabilities.

66. As a direct and proximate cause of this professional negligence, the Estate has been damages in an amount presently unknown, but which Plaintiff is informed and believes and on that basis alleges exceeds $3,000,000.

WHEREFORE, Plaintiff prays for judgment as set forth below.

**SIXTH CLAIM FOR RELIEF**
(Damages for Professional Negligence)
(Against Defendant Wiegel Law Group, APC Only)

67. Plaintiff realleges and incorporate the allegations contained in Paragraphs 1 through 66, inclusive.

68. This Claim for Relief is plead on the alternative ground that the Court concludes that (1) Defendant Wiegel Law Group has no successor or other vicarious liability for the negligent acts and omissions of Defendant Wiegel & Fried, LLP, and that (2) any claims for professional negligence against Defendant Wiegel & Fried, LLP or its principals in that capacity are barred by the statute of limitations set forth in California Code of Civil Procedure Section 340.6.

69. From and after the effective date of its representation of the Debtor on April 22, 2010, Defendant Wiegel Law Group continued to act as general business counsel for the Debtor, including without limitation (1) representation of the Debtor in various litigation matters pending in Santa Clara Superior Court, (2) representation of the Debtor in work-out negotiations with various of its Collateral Lenders, (3) coordination of the Debtor's efforts to file a Chapter 11 reorganization case, including the selection of bankruptcy counsel and the representation of the Debtor's representative at the First Meeting of Creditors.

70. In its capacity as business counsel for the Debtor, Defendant Wiegel Law Group owed the Debtor a duty to advise it as to the existence of economically viable and meritorious

litigation claims held by the Debtor against various third parties, including the necessity of filing any such claim prior to the expiration of the applicable statute of limitations and/or preserving the statute of limitations through execution of an effective tolling agreement.

71. In its capacity as business counsel for the Debtor, Defendant Wiegel Law Group knew or should have known that the Debtor held economically viable and meritorious legal malpractice claims against the Defendants Wiegel & Fried, LLP, Andrew J. Wiegel, and Clifford Fried, as is more particularly alleged in Paragraphs 53 through 67, above. Further Defendant Wiegel Law Group knew that Defendant Andrew J. Wiegel had made a conscious decision to allow all legal malpractice insurance coverage for clients of Defendant Wiegel & Fried, LLP to lapse no later than November 2, 2010 and that he had made no alternate provisions for client security for professional negligence claims.

72. Despite this knowledge, from and after the effective date of its representation of the Debtor on April 22, 2010, Defendant Wiegel Law Group committed the following negligent acts and omissions in its legal representation of the Debtor, in addition to the matters alleged in Paragraphs 53 through 67 above:

    (a) negligently failed to advise the Debtor of the nature, extent, and applicable time deadlines of its claims for professional negligence against Defendant Wiegel & Fried, LLP;

    (a) negligently failed to advise the Debtor of the nature, extent, and applicable time deadlines relating to the existing of professional liability insurance coverage in favor of legal clients of Defendant Wiegel & Fried, LLP, including the Debtor;

73. If the Court concludes that (1) Defendant Wiegel Law Group has no successor or other vicarious liability for the negligent acts and omissions of Defendant Wiegel & Fried, LLP, and that (2) any claims for professional negligence against Defendant Wiegel & Fried, LLP or its principals in that capacity are barred by the statute of limitations set forth in California Code of Civil Procedure Section 340.6, then the resulting loss of the otherwise economically viable and

meritorious claim for professional negligence against Defendant Wiegel & Fried, LLP will be the direct and proximate result of the professional negligence of Defendant Wiegel Law Group, as alleged above.

74. As a direct and proximate cause of this professional negligence, the Estate has been damages in an amount presently unknown, but which Plaintiff is informed and believes and on that basis alleges exceeds $3,000,000.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### SEVENTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)
### (Against the Wiegel Defendants Only)

75. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 75, inclusive.

76. At all relevant times, the Wiegel Defendants, as attorneys at law engaged to provide legal services to the Debtor, owed the Debtor fiduciary duties of care and loyalty.

77. The conduct of the Wiegel Defendants, as alleged above, constituted a breach of these fiduciary duties of care and loyalty.

78. Had the Wiegel Defendants and each of them not breached their fiduciary duties to the Debtor, the Debtor would have been able to timely marshal, reorganize, and/or liquidate its assets for the benefit of its creditors and avoid incurring additional unnecessary liabilities.

79. As a direct and proximate cause of this breach of fiduciary duties, the Estate has been damaged in an amount presently unknown, but which Plaintiff is informed and believes and on that basis alleges exceeds $3,000,000.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For an order avoiding the Debtor's 548 Transfers and 544 Transfers, and preserving these Transfers for the benefit of the Estate;

2. For an award of compensatory money damages in an amount not less than $3,000,000 plus interest thereon at the legal rate, according to proof;

3. For an award of punitive and exemplary damages (against the Insider Defendants only) according to proof;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court deems proper.

Dated: April 1, 2013　　　　　　　　　　　　MACCONAGHY & BARNIER, PLC

/s/ John H. MacConaghy
John H. MacConaghy
Attorneys for Plaintiff Janina M. Hoskins,
Trustee in Bankruptcy

8034.PARKER.SAC.WPD